IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WAYNE E. COATES, et. al., | No. CV 09-682-TUC-CKJ (CRP) |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| vs. | |
| GREGORY H. SCHEID, et al., | |
| Defendants. | |

Pending before the Court is Defendants Susan Minnick and Eric Mathers' Motion for Summary Judgment on all causes of action in the Complaint. (Doc. 38). Defendants Manuel Noriega and Magdalena Noriega orally joined in this Motion at the end of oral argument but their position and Plaintiffs' response to their position is not briefed and therefore, not properly before the Court. Unless otherwise stated, use of "Defendants" in this Report and Recommendation addresses only Defendants Minnick and Mathers.

Defendants contend Plaintiffs' section 1983 claims and the conspiracy to violate section 1983 claim cannot survive summary judgment because (1) Plaintiffs fail to show how Defendants, as private parties, acted under color of law in the alleged violations and (2) Plaintiffs fail to produce evidence that their constitutional rights were violated. (Doc. 38, pp.

4- 7, 9-12).[1] Defendants also argue Plaintiffs fail to show evidence supporting the elements of their intentional infliction of emotional distress claim. (Doc. 38, pp.7-9). Plaintiffs contest the Motion for Summary Judgment. (Doc. 44). They argue the conduct of Defendants Minnick and Mathers constituted governmental action and they further contend they have provided sufficient facts to survive summary judgment on their claims. (Doc. 44, pp. 9-21). Defendants filed a reply to Plaintiffs' response and note Plaintiffs' failed to controvert any of Defendants' facts and under the Local Rules, Defendants facts are admitted for purposes of resolving the Motion for Summary Judgment. (Doc. 56, p. 1).

## I. BACKGROUND

This case arises from a neighborhood dispute in rural Arizona. Plaintiffs moved into the rural neighborhood where Defendants live in October 2006. (Doc. 39, ¶ 1; Doc. 45, ¶ 1). Plaintiffs are marathon runners and frequently run in the neighborhood, including past Defendants' home. (Doc. 39, ¶ 2; Doc. 44, p. 2 (citing Defendants' Statement of Facts)). The parties dispute exactly when problems began but all agree that Plaintiffs had problems with neighbors' dogs running through the neighborhood, unleashed. (Doc. 45, ¶¶ 1-3; Doc. 57, ¶¶ 1-3).

Plaintiffs specifically allege one of Defendants' dogs bit Plaintiff Wiercinski while she was out running past Defendants' property on September 24, 2007. (Doc. 39, ¶ 3; Doc. 45, ¶ 3). The dog bite issue has been adjudicated in state court and is not at issue in this case. Because of the dog bite incident, Defendants' dogs were quarantined and Defendants were cited by Santa Cruz Animal Control. (Doc. 39, ¶ 4; Doc. 45, ¶ 5). After the dog bite, Defendants erected an electric fence around their property and a gate. (Doc. 39, ¶ 18; Doc. 45, ¶ 15). Defendant Minnick then met with County Attorney George Silva to show him her receipts for the electric fence and gate and show him proof of licensing and vaccination of the puppies. (Doc. 39, ¶¶ 18-19; Doc. 45, ¶ 16). County Attorney Silva subsequently

---

[1] Unless otherwise noted, this Report and Recommendation cites to the pagination of the Court's electronic case management system, CM/ECF.

- 2 -

1  dismissed the citations against Defendants regarding the dog bite incident. (Doc. 39, ¶ 20;
2  Doc. 45, ¶ 16).

3  The parties dispute whether Defendants made specific threats to Plaintiffs about
4  running in the neighborhood. Plaintiffs claim Defendant Mathers threatened to deliberately
5  drive at an excessive speed past Plaintiffs while they were running; Defendant Mathers
6  denies this allegation. (Doc. 45, ¶ 9; Doc. 57, ¶ 9). Plaintiffs also claim two of Defendants
7  dogs confronted Plaintiff Wiercinski while she was jogging on the neighborhood road a
8  month after the dog bite incident; Defendants dispute this incident. (Doc. 45, ¶ 13; Doc. 57,
9  ¶ 13). Plaintiffs state Plaintiff Wiercinski was "afraid" during this alleged incident but that
10 characterization is not supported by her deposition testimony. (Doc. 45, ¶ 13; Doc. 57, ¶ 13).

11 Both Plaintiffs and Defendants allege escalating behavior surrounding the
12 neighborhood dispute. Defendants allege that after the dog bite incident, Plaintiff Coates "on
13 several occasions, stopped in front of the Defendants' property, stared towards the house,
14 whistled at the dogs, and appeared to take photographs." (Doc. 39, ¶ 5). Defendants claim
15 Plaintiff Coates' behavior eventually led Defendant Minnick to file a petition for harassment
16 in October 2007. (Doc. 39, ¶ 6; Doc. 45, ¶ 17). The parties agree Defendant Minnick
17 withdrew this petition but disagree as to why it was withdrawn. (Doc. 39, ¶ 7; Doc. 45, ¶ 17;
18 Doc. 57, ¶ 17). Defendants claim Defendant Minnick withdrew the petition because she
19 feared retaliation; Plaintiffs did not follow L.R.Civ. 56.1 in disputing this fact. (Doc. 39, ¶
20 7). Plaintiffs claim in their statement of facts that based on Defendant Minnick's admission
21 during deposition that her dogs were still in quarantine when she filed the petition, Defendant
22 Minnick withdrew the petition because she knew there were inaccuracies in it. (Doc. 45, ¶
23 17). In a different incident, Defendant Mathers reported Plaintiff Coates to the Santa Cruz
24 County Sheriff's Department for "zig[-]zagg[ing] and lurch[ing] in front of Mather's car as
25 Mathers was driving up the dirt road to his house." (Doc. 39, ¶ 9).

26 Plaintiffs allege numerous meetings and contact between Defendants and other
27 neighbors regarding the neighborhood dispute with Plaintiffs. Defendants attended a
28 barbeque at another neighbor's house on October 5, 2007. (Doc. 45, ¶ 22(A); Doc. 57, ¶

- 3 -

1  22(A)). At the barbeque or earlier in the day, Defendant Minnick discussed another
2  neighborhood incident between Plaintiffs and neighbors named the Stocktons. (Doc. 45, ¶
3  26; Doc. 57, ¶ 26). Defendant Mathers was told about the "dog agreement" at the barbeque
4  and he signed it the next day. (Doc. 45, ¶ 29).[2] At the barbeque, Defendant Minnick learned
5  from another neighbor that Sergeant Noriega was conducting an investigation of the
6  neighborhood dispute and that if Defendant Minnick wanted to make a statement, she could.
7  (Doc. 45, ¶ 30).[3] Defendant Minnick later met with Sergeant Noriega on November 10,
8  2007. (Doc. 45, ¶ 34; Doc. 57, ¶ 34). Plaintiffs further allege another neighbor, Christopher
9  Rutter, refused to talk to Plaintiff Wiercinski when introduced to her because he had heard
10 the neighborhood rumors about her behavior. (Doc. 45; ¶¶ 44-46). These facts regarding
11 Christopher Rutter are not supported by the deposition cited by Plaintiffs.

    Many of the neighbors who owned dogs eventually entered into what is now known
in this case as "the dog agreement." The dog agreement states the following:

> We hereby agree to the following:
>
> Every dog owned by each of the undersigned is authorized to freely roam the properties owned by every one of the undersigned, which includes their respective easements.
>
> Such authority to roam may be rescinded at any time by any property owner with respect to his property by providing verbal and written notice first to the dog's owner, who shall have a reasonable time to respond and rectify the problem. Notice to rescind the authority to roam must then be provided in writing to Santa Cruz County Animal Control.
>
> Notwithstanding the above, if a dog is considered dangerous to any person or domestic animal, Santa Cruz County Animal Control may be notified immediately, though an effort should be made to reach the respective owner as soon as possible.

---

[2] Plaintiffs' fact states Defendant Mathers was given the dog agreement and agreed to sign it. The testimony shows Defendant Mathers received the dog agreement at the barbeque but there is not indication as to whether he agreed to sign it during the barbeque. He did sign the agreement the following day. (Doc. 57, ¶ 29).

[3] Plaintiffs' fact states Defendant Minnick was told by neighbor K. Rowley that K. Rowley was gathering statements about Plaintiffs for Sergeant Noriega. The testimony cited does not support this contention. (Doc. 57, ¶ 30).

1 (Doc. 39-1, Exhibit 5, p. 35). This dog agreement was created at the suggestion of Santa
2 Cruz County Animal Control, although the parties disagree as to exactly what Animal
3 Control suggested. (Doc. 45; ¶ 27; Doc. 57; ¶ 27).[4] Defendant Mathers signed the dog
4 agreement the day after the barbeque in October 2007. (Doc. 45, ¶ 29; Doc. 57, ¶ 29).

5 Plaintiffs allege contact between Defendants and the county attorney. Plaintiffs allege
6 Defendants attended a birthday party at a neighbor's house in March 2008 at which two
7 deputy county attorneys were present; Defendants dispute this fact and the deposition cited
8 by Plaintiffs does not support their assertion. (Doc. 45, ¶ 22(C); Doc. 57, ¶ 22(C). *See* Doc.
9 39-1, Exhibit 4, p. 33 (deposition of Defendant Mathers)). The parties agree Defendants did
10 attend a meeting with County Attorney Silva in January 2008 at the Sonoita courthouse.
11 (Doc. 45, ¶ 22(D); Doc. 57; ¶ 22(D). Plaintiffs claim they were not invited to this meeting;
12 this allegation is not supported by the deposition cited. (Doc. 45, ¶ 39; *see* Doc. 47-1, p. 16).
13 Plaintiffs allege they were the topic of the meeting and that most of the neighborhood was
14 there; in the deposition cited by Plaintiffs, K. Rowley named a number of neighbors present
15 including Defendants and said much of the meeting was the county attorneys "trying to
16 lecture [the neighbors] to try to get along." (Doc. 45, ¶ 38; Doc. 48-1, Exhibit 7, p. 14).
17 Plaintiffs allege County Attorney Silva said, at that meeting, that he would "stand behind the
18 dog agreement." (Doc. 45, ¶ 39). Plaintiffs cite Defendant Mathers' testimony for this fact
19 and it is correct but Defendant Mathers clarified that statement by stating County Attorney
20 Silva said owners who signed the dog agreement could have their dogs on each other's
21 property but not on any roads. (Doc. 39-1, Exhibit 4, p. 31). Plaintiffs suggested in oral
22 argument that County Attorney Silva also agreed to not enforce County leash law violations;
23 this assertion is not supported by any of the deposition testimony cited by Plaintiffs.

---

26 [4] Defendants contend K. Rowley testified Animal Control told her that if her dogs had
27 permission to be on someone else's property, that was fine, and suggested that she get it in writing. The deposition of K. Rowley submitted by Plaintiffs to this Court is not complete
28 and appears to be missing page 20, which is part of the citation for this fact.

- 5 -

1 Plaintiffs allege Defendants had multiple contacts with law enforcement regarding
2 Plaintiffs. As noted *supra*, Defendant Minnick met with Sergeant Noriega on November
3 10, 2007. (Doc. 45, ¶ 34; Doc. 57, ¶ 34). Plaintiffs do not allege what was discussed during
4 that meeting; from Sergeant Noriega's police report, it appears they discussed the escalating
5 dispute between Plaintiffs and Defendants subsequent to the dog bite incident. (Doc. 48-3,
6 p. 5). Plaintiffs take issue with a report Sergeant Noriega wrote summarizing his
7 investigation of the neighborhood dispute. Plaintiffs claim Sergeant Noriega concluded the
8 dog bite was not confirmed, that the statements of all neighbors, except Plaintiffs were
9 credible, and that Plaintiffs were abusing the legal system. (Doc. 45, ¶¶ 35, 36). Defendants
10 dispute Plaintiffs characterization of the report and further point out a trial court can only
11 consider admissible evidence in ruling on a motion for summary judgment and the report is
12 hearsay. (Doc. 57, ¶¶ 35, 36). The Court first notes Plaintiffs filed an incomplete copy of
13 the report; the exhibit is missing pages 3, 4, 7, 8, 10, and 11. (*See* Doc. 48-3, pp. 1-7).[5] From
14 the part of the report filed with the Court, the report contains a detailed discussion of the
15 neighborhood dispute, Sergeant Noriega's investigation, including his discussion with Santa
16 Cruz Animal Control which dealt multiple times with Plaintiffs, and the conclusions reached
17 by Sergeant Noriega. (Doc. 48-3, pp. 1-7). In the report, Sergeant Noriega does view
18 Defendants and other neighbors as the potential victims of Plaintiffs' harassing behavior.

19 Plaintiff Coates was eventually arrested on January 3, 2008 for violations of an
20 injunction against harassment. (Doc. 45, ¶ 48; Doc. 57, ¶ 48).[6] The injunction against
21 harassment obtained by Defendant Minnick on January 18, 2008 was later dismissed on
22 March 27, 2008; Plaintiff Coates arrest on January 3, 2008 appears to be under a different
23 injunction, although it is not clear from the pleadings. (Doc. 45, ¶¶ 48, 49; Doc. 45, ¶¶ 48,
24 49). Plaintiffs allege "the cumulative effect of the actions, reactions, written and oral

---

[5] The missing pages are identified on the bottom, left of the page.

[6] Defendants note the record cited is a police report and inadmissible because it is hearsay.

- 6 -

statements and agreements of the Defendants and neighbors, the lies that were perpetrated about them and the group consent to target the Plaintiffs led to a climax when Plaintiff Coates was arrested on January 3, 2008." (Doc. 45, ¶ 50). Defendants dispute this allegation and argue it is not a fact but rather a statement of opinion and that as such, it is not admissible evidence. (Doc. 57, ¶ 50).

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1105-1106 (9th Cir.2000); *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990). When the moving party has carried its burden, the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987). But the evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## III. ANALYSIS

### A. § 1983 CLAIM

To prove a section 1983 claim, a plaintiff must prove two essential elements: "(1) that a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the claimant of some right, privilege, or immunity by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir.1988) (internal citations omitted). Section 1983 claims cannot include private conduct, no matter how discriminatory or wrong. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations omitted).

#### *1. Acting Under Color of State Law*

In this case, Defendants are not state officials; they are private parties. An analysis of whether a private party acted under the color of law begins "with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir.1999) (internal citations omitted). For private conduct to transform into governmental action there must be "something more" present such as private parties serving a "public function", private parties engaging in "joint action" with the government, governmental compulsion or coercion, or a governmental nexus. *Id*. at 835-836 (internal citations omitted). Ultimately, courts determine liability under section 1983 with the question "is the alleged infringement of

federal rights fairly attributable to the [government]?" *Id.* at 835 (internal citation omitted).

Plaintiffs allege Defendants engaged in joint action with government officials by conspiring with them to violate Plaintiffs' constitutional rights. (Doc. 44, p. 9). Plaintiffs offers of evidence on this contention are not sufficient. Plaintiffs fail to show Defendants were anything but private parties fighting with Plaintiffs in an escalating neighborhood dispute. Plaintiffs contend the interactions between Defendants and county officials raise Defendants' actions to actions under the color of law. This Court disagrees.

One of the facts Plaintiffs offer in support of their contention is that after the dog bite incident, the citations issued against Defendants were eventually dismissed by the county attorney. Plaintiffs contend this is evidence that supports their contention that Plaintiffs acted under color of state law. While it is true that the citations were dismissed, it is not indicative of Defendants conspiring with government officials or acting themselves under color of state law. After being issued numerous citations for the dog bite incident, Defendants erected an electric fence around their property and a gate. Defendant Minnick then met with County Attorney Silva to show him the receipts for the fence and show him proof of licensing and vaccination of the puppies. No conspiracy is suggested by a county attorney deciding to dismiss the citations against a property owner who has shown proof that they have remedied the problem that resulted in the citations.

Another fact offered as proof of conspiracy and as proof of Defendants acting under color of state law are the meetings between Defendants and other neighbors. Meetings between private parties including neighborhood meetings, birthday parties, barbeques, *et cetera* are not proof of Defendants acting under color of state law or conspiring with government officials. Plaintiffs argue, in part, that these meetings were used to circulate information about Plaintiffs and urge Defendants and other neighbors to make statements against Plaintiffs. Specifically, Plaintiffs argue that at a barbeque Defendants found out that K. Rowley was collecting statements to provide to Sergeant

- 9 -

1  Noriega in his investigation of the neighborhood dispute.  One neighbor, at a private
2  party, collecting statements from other neighbors including Defendants about Plaintiffs
3  with the intent of handing those statements over to a law enforcement officer conducting
4  an investigation is not evidence of a conspiracy nor is it evidence that Defendants acted
5  under color of state law.

6  Plaintiffs further contend the dog agreement signed by Defendants and other
7  neighbors is proof of a conspiracy to violate Plaintiffs' constitutional rights.  This dog
8  agreement was signed by private parties and is essentially an agreement that the dogs of
9  the parties to the agreement can run freely on each other's property and easements.  While
10 there may be some question of how the dogs can move from one property to another
11 without crossing public roads, unless there are easements, that question is not before this
12 Court.  The dog agreement shows only that some neighbors in this neighborhood,
13 including Defendants, agreed to permit each other's dogs to roam freely on the properties
14 of those parties to the agreement.  While such an agreement appears disadvantageous to
15 Plaintiffs, who do not want any dogs to roam freely, it is not evidence of conspiracy or
16 Defendants acting under color of state law.  The Santa Cruz Animal Control did suggest
17 the dog agreement, but this suggestion was in the context of another neighbor asking
18 Animal Control if it was okay for her dogs to be on another neighbor's property if she had
19 that neighbor's permission.  Animal Control told that neighbor such an agreement was
20 fine and suggested that she get the agreement in writing.  This is not evidence of anyone
21 acting under the color of state law to violate Plaintiffs' constitutional rights.

22 Plaintiffs also offer County Attorney Silva's meeting with neighbors, including
23 Defendants, in January 2008 as proof that Defendants jointly acted with government
24 officials.  The deposition testimony cited by both parties shows County Attorney Silva
25 did hold this meeting at the Sonoita courthouse and did discuss the neighborhood dispute.
26 Ms. Rowley, whose deposition is relied upon for a description of this meeting, stated that
27 much of the meeting was the county attorneys lecturing the neighbors about trying to get
28

- 10 -

along with each other. This is not evidence of a conspiracy or of anyone acting under the color of state law to violate Plaintiffs' constitutional rights. It is evidence of a local official working to resolve what appears to be an ongoing dispute between neighbors.

Plaintiffs also rely on Defendant Mathers' deposition testimony in which he said County Attorney Silva told the neighbors at the meeting that he would stand behind the dog agreement. Defendant Mathers immediately clarified that statement by conveying County Attorney Silva's full statement about the dog agreement. According to Defendant Mathers, County Attorney Silva said the dog owners who signed the agreement could have their dogs on each other's property but not on any roads. No testimony supports Plaintiffs' assertion that County Attorney Silva told the neighbors he would not enforce county leash laws. This Court views the facts as presented in the summary judgment pleadings as evidence that County Attorney Silva was attempting to resolve a neighborhood dispute and meeting with the neighbors, lecturing them about the need to get along with each other, and stating he would enforce the dog agreement as written is all evidence of his attempt to resolve the dispute.

Plaintiffs also contend Defendants interactions with Sergeant Noriega show Defendants acted under color of state law or conspired with Sergeant Noriega to violate Plaintiffs' constitutional rights. From the facts submitted by Plaintiffs, it appears Defendants gave Sergeant Noriega a statement for his investigation of the neighborhood dispute and that Defendant Minnick met with Sergeant Noriega in November 2007 to discuss the dispute. From his investigation, the statements submitted by Defendants and other neighbors, and his discussion with Santa Cruz Animal Control, Sergeant Noriega did eventually issue a report in which he found Defendants and other neighbors were the potential victims of Plaintiffs' harassing behavior. Sergeant Noriega's conclusion that Plaintiffs were the instigators in this neighborhood dispute is not proof of any conspiracy against Plaintiffs nor evidence that Defendants acted under color of state law.

- 11 -

1  Finally, Plaintiff Coates' eventual arrest on January 3, 2008 for violations of an
2  injunction against harassment is not indicative of Defendants acting under color of state
3  law nor of a conspiracy. Plaintiffs do not dispute that Plaintiff Coates had an injunction
4  against him nor do they dispute that he violated that injunction. There is no evidence that
5  this arrest was part of any conspiracy between Defendants and government officials.

  Plaintiffs fail to offer any fact on which a reasonable jury could find that
Defendants acted under color of state law in allegedly violating Plaintiffs' constitutional
rights. Defendants carried their burden by showing the absence of action under color of
law. The Magistrate Judge recommends that the District Court, after independent review,
grant Defendants' Motion for Summary Judgment on the § 1983 claims as Plaintiffs did
not produce evidence showing Defendants acted under the color of state law and therefore
Plaintiffs cannot prove the first element of a section 1983 claim.

## 2. *Specific § 1983 Claims*

  In addition to failing to show evidence of the first requirement for section 1983
claims of 'acting under color of state law', Plaintiffs also fail to show facts to satisfy the
elements of their specific constitutional claims under the second requirement for section
1983 claims. In Count One of their complaint, alleging section 1983 violations, Plaintiffs
specifically allege violations of their First, Fourth, and Fourteenth Amendment rights.

  Plaintiffs do not make any specific allegations in their complaint of Defendants
Minnick and Mathers violating their First Amendment rights. (*See* Doc. 1-1). Plaintiffs
do allege that Kathleen Rowley reported Plaintiff Coates to law enforcement for
exercising his First Amendment right of free speech. (Doc. 1-1, p. 5). In their response
to Defendants' Motion for Summary Judgment, Plaintiffs allege Plaintiff Coates took
photographs to support his litigation against Defendants and that Defendants asserted the
taking of the photographs was a violation of an injunction. (Doc. 44, p. 12). Plaintiffs
contend in their reply that Defendants conspired to have Plaintiff Coates arrested and
imprisoned for taking the photographs. (Doc. 44, p. 12). The First Amendment prohibits

- 12 -

the government from restricting expression "because of its message, its ideas, its subject matter, or its content." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 (1983) (internal citation omitted).

In this case, Plaintiff has failed to produce evidence showing any expression, including his taking of photographs, was protected and was limited by Defendants under color of state law. Even if Plaintiffs had claimed in the Complaint that Plaintiff Coates' First Amendment right to expression in taking the photographs was violated, Plaintiffs have failed to show (1) that his expression in taking the photographs was protected by the First Amendment and (2) that Plaintiff Coates was prevented from taking those photographs.

Plaintiffs further allege, in violation of their Fourth Amendment rights, Defendants made false statements to Sergeant Noriega that resulted in Plaintiff Coates' arrest. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.Const. Amend. IV. A person who provides inaccurate information that leads to an arrest is not involved in joint activity with the state and therefore, not liable under section 1983. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1357-1358 (9th Cir.1981). Plaintiffs do not produce facts to support a claim that Defendants gave false or inaccurate statements to Sergeant Noriega that resulted in the arrest of Plaintiff Coates. Further, even if Defendants had made inaccurate statements, they would not be liable under section 1983 for an arrest based on those statements.

The Court finds it unnecessary to determine whether res judicata precludes this Court from deciding whether the statements made to law enforcement are privileged. The Court notes none of Plaintiffs' section 1983 claims can survive summary judgment because Plaintiffs failed to show Defendants acted under color of state law. The Court further notes that Plaintiffs failed to produce evidence that Defendants gave false

- 13 -

statements to law enforcement officers.  Finally, if the statements were false, Defendants are not liable for them under section 1983.

Regarding the Fourteenth Amendment claim, Defendants allege they are private parties and that the Fourteenth Amendment protects only against governmental action. (Doc. 38, p. 7).  Plaintiffs contend Defendants' actions are sufficiently entwined with government actors to make Defendants liable as acting under color of state law.  (Doc. 44, p. 16).  As discussed *supra*, this Court finds that Defendants are private parties and Plaintiffs failed to produce evidence to show Defendants acted under color of state law.

In Count One, Plaintiffs further allege violations of Arizona statutes governing public meetings in concert with County Attorney Silva and Plaintiffs also allege county leash law violations.  Section 1983 is a method for vindicating federal rights; as such, "the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir.2005) (internal citations omitted).  The state law claims are not viable as section 1983 violations.

The Magistrate Judge recommends the District Judge grant Defendants summary judgment on all the section 1983 claims.

## B.  CONSPIRACY TO COMMIT § 1983 CLAIM

To prove conspiracy between government actors and private parties under section 1983, a claimant must show the government actors and private parties had "an agreement or 'meeting of the minds' to violate [claimant's] constitutional rights." *United Steelworkers of American v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-1541 (9th Cir.1989) (internal citations omitted).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. at 1541 (internal citation omitted).

- 14 -

In this case, Plaintiffs have not produced evidence that shows any agreement between Defendants and government actors. Plaintiffs allege meetings between Defendants and County Attorney Silva. As discussed *supra*, at the meeting with County Attorney Silva, the county attorney lectured the neighbors, including Defendants, on trying to get along with their neighbors. While County Attorney Silva allegedly said he would enforce the dog agreement, he also allegedly said dogs could only run on the properties of those parties to the agreement and not on public roads. After the dog bite incident, Defendants were issued numerous citations. County Attorney Silva did eventually dismiss these citations but only after Defendant Minnick showed him the receipts for a new electric fence and a gate and proof of vaccination for their puppies. Plaintiffs offer no evidence that County Attorney Silva and Defendants entered into any kind of agreement that shared a common objective to violate any of Defendants' constitutional rights.

Plaintiffs also allege meetings between Defendants and Sergeant Noriega show a conspiracy. Defendant Minnick did meet with Sergeant Noriega in November 2007 about the escalating neighborhood dispute. Sergeant Noriega did take a written statement from Defendants about the neighborhood dispute. He also eventually wrote a report in which he opined Defendants and other neighbors were the potential victims of Plaintiffs given Plaintiffs' harassing behavior. None of this evidence shows Defendants and Sergeant Noriega had a meeting of the minds and determined to violate Plaintiffs' constitutional rights.

The dog agreement is also not evidence of a conspiracy. This agreement was executed between many of the neighbors including Defendants. The facts show Santa Cruz County Animal Control suggested the neighbors interested in allowing their dogs to roam freely on each other's property and easements enter into an agreement in writing to this effect. It appears this agreement was in an effort to offer some resolution to Plaintiffs' consistent complaint about dogs running freely in the neighborhood. Whether

the dog agreement is a reasonable resolution is not a question before this Court. The agreement was between private parties. It does not permit any violation of state or local laws. County Attorney Silva alleged statement that he would enforce such an agreement but that dogs could not run on public roads is not evidence of conspiracy. If anything, it is evidence of a government official attempting to calm an escalating neighborhood dispute.

The Magistrate Judge recommends that the District Court, after independent review, grant Defendants summary judgment on the claim of conspiracy to commit section 1983 violations.

## C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Under Arizona tort law, the tort of intentional infliction of emotional distress ("IIED") requires the claimant to prove: (1) defendant's conduct was "extreme" and "outrageous"; (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from his conduct; and (3) that claimant suffered severe emotional distress as a result of defendant's conduct. *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (Ariz.2005) (internal citations omitted).

In briefing, Defendants argue Plaintiffs failed to offer evidence that Defendants conduct was "extreme" and "outrageous". To prevail on an IIED claim under Arizona law, Plaintiffs must prove that Defendants acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Patton v. First Federal Sav. and Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (Ariz.1978).

Plaintiffs allege Defendants let their dogs roam freely and Plaintiff Wiercinski cannot jog on the local roads. Yet, the facts cited by both parties show that Defendants erected an electric fence and gate around their property in order to keep their dogs on their property after the dog bite incident with Plaintiff Wiercinski. Further, the facts show

Plaintiffs ran through the neighborhood subsequent to the dog bite incident. Plaintiffs also allege they feel like they are wasting their time calling local law enforcement about the unleashed dogs running through the neighborhood. Yet, Sergeant Noriega's report showed Santa Cruz County Animal Control responded to Plaintiffs' complaints about unleashed dogs twelve times between October 2006 through October 2007. Plaintiffs further contend that living in a neighborhood where they are not invited to local functions and they are aware of negative rumors circulating about them is outrageous conduct. While this certainly seems like an unfriendly atmosphere, it is not outrageous or extreme conduct on the part of Defendants. Also, the statements Defendants gave to Sergeant Noriega in his investigation of the neighborhood dispute do not constitute outrageous or extreme conduct. Plaintiffs contend Defendants gave Sergeant Noriega false statements but their statement of facts do not support this assertion.

In oral argument, Defendants also argued Plaintiffs had not produced any evidence that Plaintiffs suffered severe emotional distress as a result of any of Defendants' conduct. Defendants are correct. In their statement of facts, Plaintiffs have not offered any evidence that they suffered severe emotional distress. Certainly this neighborhood dispute has been distressing to all parties involved but Plaintiffs are obligated to produce evidence of the severe emotional distress that they have suffered and they have not met that obligation.

The Magistrate Judge recommends that the District Court grant Defendants' summary judgment on the IIED claims.

## IV. RECOMMENDATION

The Magistrate Judge recommends that the District Court, after independent review, GRANT Defendants' Motion for Summary Judgment on all claims against them. (Doc. 38).

Pursuant to 28 U.S.C. § 636(b), any part may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that

any objections filed are to be identified with the following case number: **CV 09-682-CKJ**.

DATED this 16th day of September, 2010.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 18 -